McMILLIN, C.J.,
for the Court:
¶ 1. Thomas Campbell appeals from a judgment of contempt and related money judgment entered against him for his failure to comply with the terms of a property settlement agreement executed by him in conjunction with his divorce from the ap-pellee, Joy Campbell. Finding Mr. Campbell’s appeal to be without merit, we affirm the chancellor’s decision.
¶ 2. The Campbells were divorced on grounds of irreconcilable differences in De-Soto County. As a part of that proceeding, the parties entered into and filed with the chancery court a property settlement agreement which was approved by the chancellor and its terms incorporated into the judgment of- divorce. Among the provisions of the agreement was a term that awarded possession of the jointly-owned marital domicile to Mrs. Campbell. Mr. Campbell agreed to make the mortgage payments due on the home' and further agreed that, at such time as the mortgage debt was finally paid, he would convey his interest in the home to Mrs. Campbell. Mrs. Campbell assumed responsibility for the taxes and insurance on the property. The agreement contained the following provision relating to the home:
In the event of a default, on the mortgage payments by Husband or in the event of a default on the taxes or insurance by Wife, the non-defaulting party shall have the option to cure the default, in which event the defaulting party shall forthwith execute a Quitclaim Deed conveying their interest in the property to the non-defaulting party.
¶ 3. Mr. Campbell became substantially delinquent in making the mortgage payments, forcing Mrs. Campbell to make the payments in order to avoid foreclosure. She ultimately initiated a contempt proceeding against Mr. Campbell for his default, seeking a judgment against him for an arrearage of approximately $57,500 and an order compelling him to make future installments. Mr. Campbell, among other defenses, filed a counterclaim alleging Mrs. Campbell was in default in regard to certain obligations relating to other real property owned by the parties. Mr. Campbell also affirmatively claimed that Mrs. Campbell’s sole remedy for his default on the mortgage payments was to compel him to quitclaim his interest in the property to her pursuant to the above-quoted provision of their agreement.
*520 ¶ 4. The chancellor found, as a matter of fact, that Mr. Campbell was in default on the mortgage payments in the amount alleged by Mrs. Campbell. The chancellor also determined that Mrs. Campbell had violated her duties under the remaining provisions of the agreement as alleged by Mr. Campbell and adjudicated her obligation under those provisions to be approximately $45,500. Therefore, the chancellor held both parties in contempt for their wilful failure to comply with their obligations under the divorce judgment. He set Mr. Campbell’s obligation at $57,-489.02 but allowed a set off of $45,459 for Mrs. Campbell’s separate defaults to arrive at a net obligation from Mr. Campbell to Mrs. Campbell of $12,030.02. The chancellor entered judgment against Mr. Campbell for the net amount and affirmed Mr. Campbell’s continuing obligation to make future mortgage payments on the former marital home. He summarily rejected Mr. Campbell’s claim that Mrs. Campbell’s sole remedy for his default on the mortgage payments was to compel him to quitclaim his interest in the property to her.
¶ 5. Mr. Campbell’s appeal purports to raise two issues; however, they both hinge on the answer to a single question: Did the chancellor misconstrue the terms of the property settlement agreement regarding Mr. Campbell’s continuing obligation to make future mortgage payments and Mrs. Campbell’s available remedies in the event of a default by Mr. Campbell in making the payments?
¶ 6. The issue before us is, at its heart, a matter of contract interpretation. See East v. East, 493 So.2d 927, 931 (Miss.1986). The basic rule of contract interpretation is that it must be enforced according to its plain language. Lehman-Roberts Co. v. State Highway Comm’n of Miss., 673 So.2d 742, 743 (Miss.1996). We need cite no further authority than that to reject Mr. Campbell’s argument. The plain language of the contested provisions of the agreement compelled Mr. Campbell, without qualification, to “pay the monthly mortgage payments to Sunburst Bank....” The agreement further provided in explicit language that, after that mortgage debt was paid in full, Mr. Campbell would “convey all of his right, title and interest in and to that residence.... ” The only provision regarding default by Mr. Campbell in those payments said that, if such a default occurred, Mrs. Campbell might cure his default, in which event Mr. Campbell could be required to convey away his interest in the property at an earlier time than if he had not defaulted. There is nothing in this provision that indicates that Mr. Campbell’s post-default obligation to make this early conveyance of his interest in the property would also relieve him of his continuing obligation to make mortgage payments until the indebtedness was paid in full. As the chancellor correctly concluded, to accept Mr. Campbell’s interpretation of the contract would be to render illusory any real duty on his part, since all he would have had to do was refuse to make the first payment after the divorce, tender a deed to his interest in the property, and be relieved of any further obligation on the debt. We decline to place such an absurd interpretation on a provision of the agreement that we find clearly was intended to bind the parties otherwise. We conclude, beyond question, that Mr. Campbell’s obligation to make the recurring mortgage payments was a duty not conditioned on the state of the title to the property at any particular time, but was one that continued unabated until the mortgage debt was fully satisfied. In his brief, Mr. Campbell argues that the agreement “should have been interpreted by the Chancellor to mean that once the Husband defaulted in payments then he would immediately execute a quitclaim deed to the Wife and she would be responsible for the mortgage payments thereafter ...” (emphasis added). There is simply no support in the text of the agreement for the italicized portion of Mr. Campbell’s argument, and we firmly decline to read this unspo *521 ken provision into the agreement by implication.
¶ 7. Mrs. Campbell, in her reply brief, attempts to raise the issue that the chancellor erred in finding her in contempt. Mrs. Campbell failed to file a notice of cross-appeal as required by Mississippi Rule of Appellate Procedure 4(c). We, therefore, find ourselves 'without jurisdiction to consider the matter of her contempt adjudication.
¶ 8. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. THE STATUTORY PENALTY PROVIDED IN MISSISSIPPI CODE OF 1972 SECTION 11-3-23 (Rev.1991) IS ASSESSED UPON THE JUDGMENT RENDERED AGAINST THE APPELLANT AND INTEREST IS AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J„ NOT PARTICIPATING.